**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Darwin Bladimir Tobar Flores,

Petitioner,

v.

Luis Rosa, Jr., et al.,

Respondents.

No. CV-26-02403-PHX-SHR

**ORDER**

Pending before the Court is Petitioner Darwin Bladimir Tobar Flores's Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 5). Magistrate Judge Alison S. Bachus issued a Report and Recommendation ("R&R") recommending the Court grant the Petition in part, order Petitioner's release, and require Respondents afford Petitioner notice and a pre-deprivation hearing before any future re-detention. (Doc. 24 at 14–15.) No party filed objections to the R&R.

Having reviewed the record, the Court concludes additional information is necessary before determining whether Petitioner's present detention is lawful. The parties' arguments implicate distinct questions concerning statutory arrest authority, the legal significance of Petitioner's unrevoked deferred action, and the constitutional adequacy of the procedures afforded to him. The Court will defer ruling on the R&R and direct the parties to supplement the record as described below.

## I. STANDARD OF REVIEW

A district judge may accept, reject, or modify, in whole or in part, a magistrate

judge's findings and recommendations. 28 U.S.C. § 636(b)(1). The Court must conduct de novo review of those portions of an R&R to which a party timely makes specific objections. *Id.*; Fed. R. Civ. P. 72(b)(3). But where, as here, no objections are filed, de novo review is not required. *Thomas v. Arn*, 474 U.S. 140, 149–50 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). The absence of objections does not preclude the Court from reviewing the R&R and reaching a different legal conclusion.

## II. BACKGROUND

Petitioner entered the United States in April 2016. (Doc. 14-1 at 1.) He was subsequently arrested and released from Immigration and Customs Enforcement (ICE) custody in May 2016. (Doc. 24 at 2.) On January 17, 2026, ICE re-detained Petitioner pursuant to an I-200 warrant and initiated removal proceedings. (Doc. 24 at 2–3; Doc. 16-2 at 2; Doc. 16-3 at 2–3.) On February 24, 2026, Petitioner filed a habeas action in this District, Case No. CV-26-01283-PHX-SHR (ASB). In that matter, the Court granted Petitioner's amended habeas petition and ordered Respondents to provide an immigration bond-redetermination hearing within seven days or release Petitioner under the conditions existing before his January 2026 detention. (Doc. 24 at 3.) An Immigration Judge (IJ) held an initial custody-redetermination hearing on March 5, 2026. At Petitioner's request, the IJ continued the matter to permit Petitioner to submit supporting documentation. (*Id.*) The IJ then held a further hearing on March 27, 2026, and denied Petitioner's request for release after finding Petitioner had not met his burden to establish release would not pose a danger to persons or property. (*Id.*)

On April 8, 2026, Petitioner initiated the present habeas proceeding, in which he principally argues his January 2026 re-detention was unlawful because Respondents did not provide a pre-deprivation hearing or sufficient notice before taking him into custody. (Doc. 5; Doc. 24 at 3–5.) Respondents opposed Petitioner's requested relief (Doc. 16), and, in his reply, Petitioner, for the first time, provided documents reflecting he had been granted Special Immigrant Juvenile Status (SIJS), which conferred deferred action and

employment authorization from May 4, 2024, through May 4, 2028 (Doc. 19 at 4–5). Because the record was unclear as to whether Petitioner actually had SIJS-based deferred action and what effect it had, the magistrate judge ordered Respondents to file supplemental briefing. (Doc. 21.) In their supplemental brief, Respondents confirmed United States Citizenship and Immigration Services (USCIS) had approved Petitioner's I-360 Special Immigrant Juvenile petition and there is no evidence USCIS had terminated Petitioner's deferred-action status. (Doc. 23 at 1–2; Doc. 23-1.) Respondents nevertheless argued deferred action did not prohibit detention under § 1226(a) and asserted Petitioner could seek another bond hearing only upon a material change in circumstances or appeal to the Board of Immigration Appeals (BIA). (Doc. 23.) During the pendency of this habeas proceeding, an IJ found Petitioner inadmissible, denied his applications for asylum, withholding of removal, and Convention Against Torture protection, and ordered him removed to El Salvador. (Doc. 16-6 at 2.) Petitioner appealed the IJ's removal order and that appeal remains pending. (Doc. 24 at 4.)

The magistrate judge issued an R&R concluding Petitioner's decade-long release, active SIJS, deferred action, and work authorization created a protected liberty interest in remaining free from detention. The magistrate judge applied the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), and found the factors favored Petitioner and his re-detention without prior notice and an opportunity to be heard violated due process. The R&R recommends the Court order Petitioner's release and require Respondents afford Petitioner notice and a pre-deprivation hearing before any future re-detention. (Doc. 24 at 15.)

## III. DISCUSSION

The circumstances present in this case require the Court to consider whether—in light of Petitioner's SIJS and deferred action—ICE possessed authority to revoke Petitioner's prior release, whether that authority was lawfully exercised, and what process is required in connection with renewed custody.

. . . .

**A. Statutory Authority and Revocation of Prior Release**

The Court must first determine the legal basis of Petitioner's 2016 release from immigration custody. Petitioner characterizes his release as having occurred pursuant to an order of supervision (OSUP), whereas Respondents maintain he was released on his own recognizance. (Doc. 24 at 2.) An OSUP ordinarily concerns a noncitizen who has already been ordered removed but whose removal cannot be effectuated during the removal period. *See Singh v. Unknown Party*, No. CV-26-01685-PHX-DWL (JFM), 2026 WL 1839137, at *1 (D. Ariz. June 26, 2026). The R&R noted Petitioner had no final order of removal in 2016 and submitted no documentation establishing release pursuant to an OSUP. It therefore "proceed[ed] on the assumption that Petitioner was released on his own recognizance" under § 1226(a). (Doc. 24 at 2 n.3.)

The Court declines to adopt that assumption on the present record. Because the legal basis of the 2016 release bears directly on the authority and procedures applicable to renewed custody, that issue must be clarified before the Court determines whether Respondents complied with the governing statutory and regulatory framework. Respondents shall therefore produce the available records concerning Petitioner's 2016 arrest, custody determination, and release, including any arrest warrant, release order, and conditions of release. If those records cannot be produced, Respondents shall show cause why they are unavailable and identify the evidence supporting their position concerning the legal basis of Petitioner's release. Respondents shall also identify the statutory and regulatory authority on which they rely to justify his January 2026 re-detention.

If the supplemented record establishes Petitioner was released under § 1226(a), the Court must then determine whether Respondents lawfully exercised the authority applicable to revocation of that release in light of Petitioner's SIJS and deferred action. Section 1226(a) authorizes arrest and detention pending a decision whether a noncitizen is to be removed and permits release on bond or conditional parole. Section 1226(b) provides: "The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." The

implementing regulation likewise provides an earlier release may be revoked in the discretion of specified officials, "in which event" the noncitizen may be returned to physical custody. 8 C.F.R. § 236.1(c)(9). Those provisions establish discretionary authority to revoke release; they do not, standing alone, establish an authorized official exercised that discretion in Petitioner's case.

While revocation does not necessarily require a particular form or a separate hearing, if Respondents rely on § 1226(b) and 8 C.F.R. § 236.1(c)(9), they must identify the asserted revocation decision, the authorized official who made it, when it occurred, and the basis for that decision. If Respondents contend a different framework governed Petitioner's release or renewed custody, they must identify that framework and explain how its requirements were satisfied.

The supplemented record must also clarify the warrant history. If § 1226(b) applies, its reference to re-arrest "under the original warrant" requires consideration. The Court will not assume either that issuance of a new I-200 warrant necessarily invalidates re-detention or that a new warrant automatically satisfies the requirements governing revocation of an existing release. *See Jorge E. I. v. Blanche*, No. 26-3383 (JRT/SGE), 2026 WL 2295313 (D. Minn. Aug. 10, 2026) (granting habeas relief on statutory and regulatory grounds, without reaching constitutional claims, where a petitioner previously released on an immigration judge's bond was re-arrested under a new I-200 warrant and the record did not establish his prior release had been revoked). Respondents shall identify the warrant or other asserted authority supporting the January 2026 arrest and explain its relationship to Petitioner's prior custody and release.

Finally, the statutory and constitutional inquiries are related but distinct. A constitutionally adequate custody hearing does not necessarily establish compliance with the statutory prerequisites for renewed custody. Conversely, a defect in the re-arrest does not necessarily determine the legality of all subsequent detention. The Court therefore reserves its determination of statutory compliance pending supplementation of the record and separately addresses below the constitutional questions raised by Petitioner's re-

detention.

**B. SIJS and Active Deferred Action**

USCIS approved Petitioner's SIJS petition and granted him a defined period of deferred action that, according to Respondents, remains unrevoked. The Court must determine what effect those benefits have on the authority and procedures governing Petitioner's renewed custody. As explained above, however, the statutory basis of Petitioner's prior release and January 2026 re-detention remains unresolved. The Court therefore will not presume § 1226 governs that inquiry.

SIJS "is a form of parole that confers eligibility for adjustment to [lawful permanent resident] status to noncitizen minors who have been abused, abandoned, or neglected." *Murillo-Chavez v. Bondi*, 128 F.4th 1076, 1085 (9th Cir. 2025). Additionally, the deferred action status "confers removal protections to certain young noncitizens." *Del Valle Castillo v. Wamsley*, No. 2:25-cv-02054-TMC, 2025 WL 3524932, at *6 (W.D. Wash. Nov. 26, 2025) (citing 8 U.S.C. §§ 1101(a)(27)(J), 1227(c)). Under 8 U.S.C. § 1255(h)(1), an approved SIJS beneficiary is deemed paroled "for purposes of subsection (a)," which governs adjustment of status. That provision does not, by its terms, establish a categorical exemption from detention under § 1226. The Court must nevertheless consider Petitioner's SIJS and unrevoked grant of deferred action in assessing the legal basis and individualized justification for renewed custody. *See Garcia Lanza v. Noem*, 822 F. Supp. 3d 326, 334–36 (E.D.N.Y. 2026) (considering an SIJS beneficiary's active deferred action in assessing the lawfulness of his arrest and detention and the process required in circumstances involving a warrantless mistaken-identity arrest and subsequent revocation of deferred action and employment authorization).

The parties' submissions do not adequately address that issue. Respondents assert deferred action does not alter their authority under § 1226(b), but they have not sufficiently explained how that authority, if applicable, operates in conjunction with Petitioner's still-effective deferred-action grant. Instead, Respondents merely state deferred action "prevents removal itself" but "does not appear to have the same limitations on detention

during removal proceedings." (Doc. 23 at 2.) The Court seeks clarification as to the legal basis for detaining Petitioner pending removal proceedings while his unrevoked deferred action precludes removal. Further, the present record does not establish whether ICE officials knew of or considered Petitioner's SIJS when taking him into custody, or whether it was presented to and considered by the IJ during the subsequent custody proceedings. Petitioner, in turn, has not established his SIJS or deferred action categorically precludes renewed detention. The Court reserves those questions pending clarification of the governing statutory framework and supplementation of the record.

Respondents shall address the effect of Petitioner's SIJS and unrevoked deferred action under the statutory framework they identify as governing his re-detention. Their submission shall explain: whether those benefits affect Respondents' authority to revoke Petitioner's prior release or return him to custody and, if so, how; whether they bear on the factual or legal justification for renewed detention or the procedures required before or after re-detention; whether ICE officials knew of Petitioner's SIJS and deferred action at the time of the January 2026 arrest and whether those benefits were considered in any decision to revoke his release or detain him; whether those benefits were presented to and considered by the IJ during the March 2026 custody proceedings, and what significance the resulting custody determination has for the legality of continued detention. Respondents shall identify the supporting records or provide a declaration addressing any matters not established by the existing record. Petitioner may respond and identify the statutory, regulatory, or constitutional grounds on which he contends his SIJS and active deferred action limit Respondents' authority or require additional procedural protections.

**C. Procedural Due Process**

Petitioner principally argues his January 2026 re-detention, following approximately a decade of release, violated due process because Respondents did not provide adequate notice or an opportunity to be heard before taking him into custody. (Doc. 5.) His intervening grant of SIJS and deferred action presents an additional question concerning the procedures required under the Due Process Clause. The Court must

evaluate that claim separately from whether Respondents complied with the statutory and regulatory requirements governing renewed custody.

In *Singh*, the court applied the framework set forth in *Mathews* and concluded due process did not require a pre-deprivation hearing before re-detention of a noncitizen previously released under § 1226(a). 2026 WL 1839137, at *2–6. That reasoning informs the analysis if the supplemented record establishes § 1226 governed Petitioner's release and renewed custody. It does not, however, resolve whether that framework applies here, whether Respondents lawfully exercised the applicable revocation authority, or what significance Petitioner's unrevoked SIJS and deferred action has for the process due in his circumstances.

The present record does not adequately establish whether the March custody proceedings addressed Petitioner's SIJS and deferred action or the asserted basis for terminating his prior release. If the supplemented record establishes a statutory or procedural defect in Petitioner's re-detention, the parties shall also address whether the subsequent custody determination independently supports continued detention and what remedy follows from the established violation. The Court reserves its conclusions pending those submissions.

## IV. CONCLUSION

**IT IS ORDERED** the Court **DEFERS** ruling on the R&R (Doc. 24) and the Amended Petition (Doc. 5).

**IT IS FURTHER ORDERED** Respondents shall file the memorandum and supplements to the record described above on or before **Thursday, October 29, 2026**.

**IT IS FURTHER ORDERED** Petitioner may file a response within **ten (10) days** after service of Respondents' submission.

**IT IS FURTHER ORDERED** Petitioner may file a renewed Motion to Appoint Counsel within **ten (10) days** of the date this Order is filed. Any renewed motion shall include a completed CJA 23 Form (Financial Affidavit). The Clerk of Court shall send Petitioner a copy of that form. The completed affidavit shall be filed under seal.

**IT IS FURTHER ORDERED**, absent a court-ordered extension, if Respondents fail to comply with the requirements set forth in this Order by **Thursday, October 29, 2026**, Petitioner shall be immediately released and Respondents must provide notice of compliance by **Monday, November 2, 2026**.

Dated this 9th day of October, 2026.

Honorable Scott H. Rash
United States District Judge

CJA-23
(Rev 3/21)

# FINANCIAL AFFIDAVIT

IN SUPPORT OF REQUEST FOR ATTORNEY, EXPERT, OR OTHER SERVICES WITHOUT PAYMENT OF FEE

**IN THE UNITED STATES** ☐ DISTRICT COURT ☐ COURT OF APPEALS ☐ OTHER *(Specify Below)*

IN THE CASE OF

FOR

AT

LOCATION NUMBER

______________________ V. ______________________

PERSON REPRESENTED *(Show your full name)*

1 ☐ Defendant - Adult
2 ☐ Defendant - Juvenile
3 ☐ Appellant
4 ☐ Probation Violator
5 ☐ Supervised Release Violator
6 ☐ Habeas Petitioner
7 ☐ 2255 Petitioner
8 ☐ Material Witness
9 ☐ Other *(Specify)* ______________________

DOCKET NUMBERS
Magistrate Judge
District Court
Court of Appeals

CHARGE/OFFENSE *(Describe if applicable & check box→)* ☐ Felony ☐ Misdemeanor

## ANSWERS TO QUESTIONS REGARDING ABILITY TO PAY

**INCOME & ASSETS**

**EMPLOYMENT**

Do you have a job? ☐ Yes ☐ No

**IF YES,** how much do you earn per month? ______________________

Will you still have a job after this arrest? ☐ Yes ☐ No ☐ Unknown

**PROPERTY**

Do you own any of the following, and if so, what is it worth?

| | APPROXIMATE VALUE | DESCRIPTION & AMOUNT OWED |
|---|---|---|
| Home | $______________ | ______________ |
| Car/Truck/Vehicle | $______________ | ______________ |
| Boat | $______________ | ______________ |
| Stocks/bonds | $______________ | ______________ |
| Other property | $______________ | ______________ |

**CASH & BANK ACCOUNTS**

Do you have any cash, or money in savings or checking accounts? ☐ Yes ☐ No

**IF YES,** give the total approximate amount after monthly expenses $______________

**OBLIGATIONS, EXPENSES, & DEBTS**

How many people do you financially support? ______

| BILLS & DEBTS | MONTHLY EXPENSE | TOTAL DEBT |
|---|---|---|
| Housing | $______________ | $______________ |
| Groceries | $______________ | $______________ |
| Medical expenses | $______________ | $______________ |
| Utilities | $______________ | $______________ |
| Credit cards | $______________ | $______________ |
| Car/Truck/Vehicle | $______________ | $______________ |
| Childcare | $______________ | $______________ |
| Child support | $______________ | $______________ |
| Insurance | $______________ | $______________ |
| Loans | $______________ | $______________ |
| Fines | $______________ | $______________ |
| Other | $______________ | $______________ |

I certify under penalty of perjury that the foregoing is true and correct.

______________________________ ______________

SIGNATURE OF DEFENDANT (OR PERSON SEEKING REPRESENTATION) Date